[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. all jurisdictional requirements for its maintenance have been met. The marriage has broken down irretrievably with no hope of reconciliation.
The court was in session on the matter for 30 days of trial beginning on September 12 and finishing on October 27, 1994. Besides the plaintiff and the defendant, 17 other witnesses testified. The plaintiff put 46 exhibits in evidence, some of the pages of which were multi numbered. The defendant put 83 exhibits in evidence, some of which also had multi pages. Two exhibits were marked as court exhibits. Briefs were filed by the parties and the court heard oral arguments.
The plaintiff now is 40 years old and the defendant is now 43.
The parties were married on December 18, 1980 in Tel Aviv, Israel. In May 1985 they moved to the United States and lived in Norwalk, Orange and Woodbridge in Connecticut. Both are now working, the plaintiff in New Haven and the defendant in New Jersey. The plaintiff lives in Milford and the defendant in CT Page 1056 Stamford.
Each party blamed the other for the breakdown of the marriage. Neither was specific as to what actually caused the breakdown. Broadly it came down to a question of who the court would believe between the parties.
For a long time the court could find no basis on which it could resolve this question of credibility. Then on September 21. 1994, the defendant was called as a witness by the plaintiff, to testify concerning his complying with a subpoena duces tecum which had been served on him by the plaintiff's attorney. He said he had provided all the documents he had been ordered to provide except for certain documents which he did not have. He said that he had carried these in his automobile which he had parked on 14th Street in New York City, that the automobile had been broken into 10 days before September 21, and that there had been stolen from the car, his brief case, pictures, the car radio, a suit, other clothes and shoes. He said that he had not made a report to the police or to his insurance company about the robbery. The documents stolen included cancelled checks from his bank in New Jersey. He did not remember the dates of the checks but they were from the last few months. There were also stolen statements concerning his credit cards, mail he had received in New Jersey, relative to the divorce case, pictures of his two girls, records of investments, including statements from Invest. These documents were in a light brown brief case which he had been given by Netta Stern, a friend. He said that he had not gone to his Bank to get copies of the documents stolen but that he had asked for replacements of his credit card statements.
The court does not believe this incident happened. Had the theft actually occurred he would have notified the police and his insurance company at once by letters he could have produced in court. The absence of these documents convinces the court that this whole story was fabricated to excuse his failure to produce them.
The maxim "Falsus in uno, falsus in omnibus" applies to this case. It was approved by the Supreme Court as a means of testing the credibility of witnesses in the case of Raia v. Topehius,165 Conn. 231. Because the court does not believe the defendant's story of the robbery of the documents from his car, it can apply the maxim to other parts in the defendant's story if the situation so warrants. CT Page 1057
Of somewhat less significance but still on the issue of credibility is the defendant's action in taking the 2 children, issue of the marriage, back to Israel, shortly after this law suit was started. The evidence concerning this matter revealed that the defendant had consulted many attorneys about leaving Connecticut, going to Israel with the 2 children; and bringing a divorce action there against the plaintiff. The problem concerned a treaty between a large number of nations, including the United States and Israel, under which children of a marriage taken by one parent to a country signatory of the treaty could be returned to the parent from whom the children had been taken living in a country signatory of the treaty by process from the country in which the children were then located. The defendant finally had consulted an attorney with an office in New Haven. Her notes indicated that the defendant had consulted her on September 17, 1992. He had asked her about taking the 2 girls to Israel. She was familiar with the above mentioned treaty. The notes she made of their conference were not specific as to what she told the defendant but she testified that she would have advised the defendant of the status of the law and would also have advised not to take the children to Israel under the circumstances. In spite of this advice the defendant took the children to Israel without first talking to the plaintiff. The plaintiff learned of what happened a few days later and started proceedings in a court in Israel to get the 2 children back and was successful in so doing. The proceedings in the Israeli court on November 11, 1992 before Honorable Judge Haim Porat are contained in Plaintiff's Exhibit 2V. On page 17 of this document as part of the Final Judgment it is ruled:
 "a. The defendant is hereby ordered to return the two daughters to the plaintiff at her place of residence in Connecticut, U.S.A. within one week."
The Judge's reasons for doing so are set out on page 13 of the Judgment as follows:
 "12. In light of the above details, the defendant perpetuated an act of kidnapping under the meaning of Hague Convention and the Hague Convention Law and against the stipulations of paragraph 3 of the Convention. Thus, it is the obligation of the State to be concerned about the girls' immediate return to the U.S.A. and to make the procedure as short as possible and effective as declared in the introduction to The Hague Convention that is not included in the text of the appendix, however CT Page 1058 there is no doubt regarding this and it was adopted in another judgment of the Israel Supreme Court that in Miscellaneous Civil Applications file 1648/92, Tourna vs. Meshulam, that has yet to be made public.
 13. Shortly after his arrival in Israel, the defendant applied for a divorce from the Rabbinical Court in Israel which also involves the matter of custody of the children and thus he, in fact, expressed his lack of innocence that he was, through his actions, trying to improve his legal position by reasoning that it would be easier for him to manage the court case in Israel.
 Such a consideration is rejected and in order for it not to be used as, justification, the Hague Convention Law was enacted and the Hague Convention was achieved because the path of every kidnapper is to try to improve his legal status but in so doing he causes the children harm so that the act of kidnapping is, in fact, injurious and is thus, in principle, damaging to the child's interests which are at the heart of the Hague Convention even if this is a more restricted meaning as this: the act of kidnapping is against the principle of the child's welfare (See Tourna v. Meshulam case and the references that are quoted therein).
The Court finds that the defendant was the sole cause of the breakdown of the marriage.
The marriage of the parties is dissolved.
The plaintiff is awarded $1 a year as alimony until she dies, remarries or cohabits within the meaning of the statute.
Custody of the 2 children is awarded solely to the plaintiff. The defendant shall have rights of reasonable visitation with the children, without supervision. The present arrangement concerning visitation shall be followed until a request is made by either party for some change in which case the court will make any ruling required by the circumstances. The court notes that the plaintiff has requested "sole custody of the minor children to the plaintiff" and that the defendant has requested "joint custody of the minor children with physical custody awarded to the plaintiff."
Section 46b-56a of the General Statutes concerns "Joint CT Page 1059 Custody". This statute does not apply to this case. The parties
have not agreed to "joint custody" and although the defendant
requested joint custody, under the circumstances of this case the court does not even order the parties to submit to conciliation under Section (c) of said statute.
The defendant shall pay support for the children in accord with the guidelines which the court understands to be $270 per week.
The defendant shall provide medical insurance for the 2 children as available through his employer and shall pay one half of any unimbursed and unreimbursed medical and dental expense of the children.
The court finds that the defendant is in arrears $5000. on the court's order of alimony which the defendant shall pay forthwith.
The court finds that the defendant is in arrears $9500 on the court's order of support which the defendant shall pay forthwith.
The defendant shall pay all remaining fees and costs of Attorney Pasquale Pepe.
The 1989 Mercury Sable automobile shall belong solely to the plaintiff and the defendant shall execute any documents necessary to comply with this order of the court.
After all the above actions have been complied with, the parties shall divide their remaining assets so that each ends up with half (1/2) of the assets then existing between them.
THOMAS J. O'SULLIVAN, TRIAL REFEREE